(14 App. Div. 530.)

## STOKES v. HYDE.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

VENDOR AND PURCHASER—MARKETABLE TITLE—EXECUTION OF POWER.

A will gave the use and income of real estate in certain shares to each of testator's three daughters for the life of one of them, and provided that on the death of that one the property should go in the same proportions to her son and to testator's other two daughters, but that on the death of the other two daughters before their sister, leaving issue, such issue should take the share

in the income and the property which the parent would be entitled to if living. The will also gave the cestui que vie power, with the consent of her sisters, to sell the property. Pursuant to the power, the property was conveyed to a third person, who, a month afterwards, reconveyed it in equal shares to testator's three daughters. *Held*, that it was not sufficiently clear that there was a valid execution of the power so as to give a person claiming under it a marketable title, since the intermediate grantee did not hold the title long enough to overcome the presumption that the conveyance was made merely for the purpose of cutting off the contingent rights of testator's grandchildren.

Appeal from special term, New York county.

Transferred from the First department.

Action by William E. D. Stokes against Frederick E. Hyde for specific performance. There was a judgment for plaintiff, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Edward D. Cowman, for appellant.

William R. Martin, for respondent.

WILLARD BARTLETT, J. The judgment in this action, from which the defendant has appealed, directs the specific performance of the agreement set out in the complaint, whereby the plaintiff agreed to sell and the defendant agreed to purchase the premises known as "No. 150 West Fifty-Fourth Street," in the city of New York. The defendant refused to accept a conveyance of the property on the ground that the title was not marketable, and upon the further ground that the building erected on the premises encroached upon the street, and also upon the adjoining lot to the east. These objections were pleaded in the answer, wherein the defendant prayed judgment that the complaint be dismissed, and for the recovery of $1,000, paid to the plaintiff upon the execution of the contract, together with the expenses to which he had been put in examining the title. At the time of his death, in 1876, the premises in question belonged to one John Thomson, under whose will the plaintiff's title is derived. John Thomson left three children surviving, all of full age, and all of whom were living when the present action was commenced, namely, Jessie Griffin, Euphemia McLellan, and Margaret Drummond. Mrs. McLellan had three children living, and Mrs. Drummond had six children living, on the day fixed for the completion of the contract in suit. So far as it related to this real estate, the effect of John Thomson's will was to devise the use and income of one-half to Jessie Griffin during her life; the use and income of one-fourth to Euphemia McClellan during Jessie Griffin's life; and the use and income of one-fourth to Margaret Drummond, also during Jessie Griffin's life. Upon the death of Jessie Griffin, one-half of the property was devised absolutely to her son John Thomson Griffin, and one-fourth each absolutely to Euphemia McLellan and Margaret Drummond. After these devises, the will contains the following provisions:

"Seventh. In the event of the death of my said daughters Euphemia and Margaret, or either of them, before my said daughter Jessie, but leaving issue, such issue to

take the share of the income and property which the parent of such issue would be entitled to if living.

"Eighth. I hereby nominate, constitute, and appoint my said daughter Jessie Griffin executrix of this, my last will and testament, and I hereby authorize and empower her, with the consent of her sisters, to be testified by their signing the deed with her, to sell and convey my real estate upon such terms and at such times as to them shall seem best, and to sign, seal, execute, and deliver any and all necessary and proper deeds and conveyances for the same."

In the assumed exercise of the power contained in the eighth clause of the will, Jessie Griffin, who had duly qualified as executrix, acting with the consent and approbation of her sisters, Euphemia McLellan and Margaret Drummond, and of her son John Thomson Griffin, all of whom executed the deed with her, conveyed the property in question to George Ferguson for a consideration of $16,000, by a deed dated July 11, 1877. Ferguson mortgaged the property for $2,500 to the Manhattan Savings Institution by a mortgage dated August 15, 1877. This mortgage has since been discharged and canceled. By a deed of the same date, in consideration of $3,500, Ferguson conveyed to Jessie Griffin and John Thomson Griffin one undivided third of the premises, subject to the mortgage aforesaid, "to have and to hold the same unto the said Jessie Griffin for and during the term of her natural life, and from and after the time of her decease to have and to hold the same unto the said John Thomson Griffin, his heirs and assigns, forever." By another deed, also of the same date, in consideration of $10,700, Ferguson also conveyed to Euphemia McLellan and Margaret Drummond two undivided thirds of said premises in fee simple. These deeds were recorded in the register's office in New York on the same day in the same liber of conveyances, only two pages apart. By subsequent deeds the interests of Jessie Griffin, John Thomson Griffin, Euphemia McLellan, and Margaret Drummond were conveyed to Samuel J. Ashley and Edward E. Ashley, from whom, by sundry mesne conveyances, the plaintiff acquired his title.

The learned judge at special term was of the opinion that the power of sale given to the executrix to be exercised with the consent of her sisters was legally executed by the conveyance of the property to Ferguson, who thereby took an unquestionable title. If it were clear that the execution of the power was lawful, there would, of course, be no further question on this branch of the case. It seems to me, however, that the uncontroverted facts point so strongly in the opposite direction as to raise a serious doubt as to the title of the plaintiff. The effect of the will, if nothing were done under the power of sale therein contained, was to give Mrs. McLellan and Mrs. Drummond vested remainders, subject to be divested in favor of their surviving issue by the death of either before the death of their sister, Jessie Griffin. When the contract between the parties to this action was made, and at the time appointed for the fulfillment thereof, both these ladies had children living, who were in the position of contingent remainder-men as to the shares of their respective mothers, unless they had been deprived of that character by a valid execution of the power of sale on the part of the executrix. The fact that their mothers consented to the sale could not affect their rights, which, as

substitutionary devisees, were antagonistic to the interests of the parents. To extinguish any claim on the part of these children, therefore, it was essential that the power of sale should be lawfully exercised. The result, on the face of the conveyances to and from Ferguson, as already narrated, was to give Mrs. McLellan and Mrs. Drummond an absolute title to two-thirds of the property, instead of each a life estate in one-fourth, with a remainder in fee, subject to be divested in favor of her issue by the death of the life tenant before Jessie Griffin and leaving such issue. In other words, the contingent interests of the children were entirely cut off by an ostensible sale and a transfer of the property through an intermediary to two of the persons who were practically two of the donees of the power under Mr. Thomson's will. The language of the will, which authorizes the executrix to sell only with the consent of her sisters, to be evidenced by their uniting in any conveyance that may be made, renders their action as essential as that of the executrix to a valid execution of the power. Mrs. McLellan and Mrs. Drummond were, therefore, to all intents and purposes, donees of the power of sale, together with Mrs. Griffin. If any sale was to be made under the power, they owed a duty to their children to protect the interests of those children as contingent remainder-men,—a duty which was inconsistent with the acquisition of the property in fee simple absolute by themselves as purchasers; and the law forbade them, no less than the executrix, from becoming purchasers of the property through a third person or otherwise. Torrey v. Bank, 9 Paige, 648, 662; Id., 7 Hill, 260. "A trustee, or the donee of a power in trust," says Woodruff, J., in Boerum v. Schenck, 41 N. Y. 182, 188, "cannot sell to himself, either directly or indirectly; and this circuitous mode of effecting the transfer of the legal title cannot avail for that purpose." It seems to me that no one could look into this title without finding strong evidence in the several conveyances to the effect that the power of sale had been exercised in disregard of the established rule that a person cannot purchase for himself, directly or indirectly, an interest in property, when he has a duty to perform in regard to that property which is incompatible with the character of a purchaser in his own behalf. The intermediary in the present case, Ferguson, held the title longer than the first transferees in Abbot v. Rubber Co., 33 Barb. 578, 594, but not long enough to prevent the presumption from arising here which was considered by Mr. Justice William F. Allen in that case, where that eminent judge used this language:

"When the title remains in the intermediate grantee but for a moment, or a very brief period of time, and is at once transferred to the trustee, or for his benefit, the presumption that the two transfers were only intended to effect the one object,—that of conveying the property to or for the benefit of the trustee,—is as strong as is the malicious intent to kill from the deliberate use of a deadly weapon."

The facts bring the present case within the doctrine of People v. Open Board of Stock Brokers Building Co., 92 N. Y. 98, where the purchaser was relieved from his purchase because two deeds in the chain of title really represented a conveyance by an executor to himself, and such a conveyance was voidable by the beneficiaries under the will, whose interests he was bound to protect. So here the

conveyance to Ferguson is apparently voidable at the instance of the children of Mrs. McLellan and Mrs. Drummond.

These considerations dispose of the respondent's argument in support of the title under the power.    The learned counsel for the plaintiff insists, however, as I understand his brief, that the three daughters of Mr. Thomson, together with his grandson, the child of Jessie Griffin, having together received the whole estate for life and in vested remainder, could convey an absolute fee to purchasers, without regard to the execution of the power of sale.    He argues that the fee in the life tenant and remainder-men was not limited or determinable, and that in providing for the substitution of his grandchildren to take the share first given to his children the testator did not intend to defeat the devise to such children.    It is not clear whether this is meant to be simply counsel's interpretation of the sixth and seventh clauses of the will, or a denial of the power of the testator to limit a fee after a fee upon the contingency of the death of the first taker. If the former, I can only say that I think the intent of the testator to substitute his grandchildren as takers in the contingency of the death of the children mentioned in the seventh clause leaving issue, and before the death of their sister, is manifest and unmistakable.    If the latter, the contention is opposed to the settled law of this state.    The devise over to the issue of the daughters named in the seventh clause of the will was a valid executory devise, although it did limit a fee after a fee.    Van Horne v. Campbell, 100 N. Y. 287, 291, 292, 3 N. E. 316, 318, 771.    In the case cited, Andrews, J., gives a clear outline of the development of the law of executory devises, and points out that since the time of Lord Kenyon "executory devises limiting a fee after a fee upon some contingency operating to defeat the estate of the first taker—as upon his death without issue, or other specified event—have become common forms of assurance."    Without passing upon the question of encroachment, I am satisfied that the objection which has been discussed justified the defendant in rejecting the plaintiff's title.

It follows that the judgment should be reversed, and a new trial granted, with costs to abide the event.    All concur.