JACOBS v. SCHULTE et al.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

1. LANDLORD AND TENANT (§ 130*)—COVENANTS FOR QUIET ENJOYMENT—DAMAGES FOR BREACH.

Breach of covenant in a lease of quiet enjoyment does not permit recovery for loss of the bargain, unless the lessor was guilty of bad faith or unfair dealing in making the covenant or in its breach.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. § 130.*]

2. LANDLORD AND TENANT (§ 130*)—COVENANT OF QUIET ENJOYMENT—DAMAGES FOR BREACH—FRAUD.

As regards measure of damages for breach of covenant of quiet enjoyment in a lease given by a sublessee, his mere description of himself in the lease as lessee instead of sublessee, does not establish fraud or bad faith.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. § 130.*]

3. LANDLORD AND TENANT (§ 130*)—COVENANT OF QUIET ENJOYMENT—DAMAGES FOR BREACH—FRAUD—EVIDENCE.

Evidence in an action for breach of covenant of quiet enjoyment in a lease by a sublessee *held* insufficient to. show bad faith or fraud in the making or breach of the covenant, so as to permit recovery for loss of the bargain.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. § 130.*]

Appeal from Trial Term, New York County.

Action by Samuel Jacobs against David A. Schulte and another. From a judgment on a verdict for plaintiff, defendants appeal. Modified and affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Jerome Eisner, of New York City, for appellants.
Arnold Lichtig, of New York City, for respondent.

McLAUGHLIN, J.   One Phipps, who was the owner of a building situate on the west side of Broadway, between Forty-First and Forty-Second streets, in the city of New York, leased the same to the United States Restaurant & Realty Company for a term of 21 years, commencing on the 1st of September, 1908, at an annual rental of $81,-000 for the first 10 years and $87,000 for the balance of the term. On January 11, 1909, the Restaurant & Realty Company sublet two stores in the building to the defendants for a term of 9 years and 4 months from May 1, 1909, at an annual rental of $15,000. The defendants, with the consent of the Restaurant & Realty Company, on the 14th of April, 1909, sublet one of the stores to the plaintiff for the same term at an annual rental of $7,000 for the first 4 years and 8 months and $8,000 for the balance of the term. The lease to the plaintiff contained an express covenant of quiet enjoyment, and a statement that:

"The landlords are lessees of the premises hereby let and of the store to the immediate north hereof, under a lease commencing May 1, 1909."

On the 7th of April, 1910, the Restaurant & Realty Company made a general assignment for the benefit of creditors, and immediately thereafter Phipps served a notice terminating the lease to the Restaurant & Realty Company, as he had a right to do under his lease to it. The rent then or thereafter falling due, to the amount of $12,500, not having been paid, Phipps by summary proceedings dispossessed the Restaurant & Realty Company and all the subtenants on the 10th of June, 1910. The plaintiff, however, by temporary arrangement with Phipps, remained in possession of his store until October 1, 1910, when he was obliged to vacate; Phipps having leased the building to a corporation called "Rich's." He then brought this action to recover from the defendants the damages alleged to have been sustained by him for the breach of the covenant for quiet enjoyment contained in the lease from defendants to him. He had a recovery of $4,410.65, and the defendants appeal.

[1] The rule seems to be well settled, in this state at least, that in an action upon a covenant for quiet enjoyment in a deed or lease a recovery cannot be had for the loss of the bargain, unless the vendor or lessor were guilty of bad faith or unfair dealing, either in making or in the breach of the covenant. Kinney v. Watts, 14 Wend. 38; Mack v. Patchin, 42 N. Y. 167, 1 Am. Rep. 506; Cockroft v. N. Y. & H. R. R. Co., 69 N. Y. 201; Northridge v. Moore, 118 N. Y. 419, 23 N. E. 570; Walton v. Meeks, 120 N. Y. 79, 23 N. E. 1115; Empire Realty Corporation v. Sayre, 107 App. Div. 415, 95 N. Y. Supp. 371. In Mack v. Patchin, supra, the court pointed out what would constitute bad faith—actual fraud; or if one could convey, but refused to do so; or if one covenanted to convey, when he knew he

had no authority to contract to convey; or because there was a defect in his title, which he had power to correct; or where one refused to incur expenses which would enable him to fulfill his contract—and in such cases it was held that the vendor or lessor was liable to the vendee or lessee for loss of the bargain.

The trial court recognized this rule and so instructed the jury, but submitted to it to determine whether the defendants in entering into the lease were guilty of fraud or acted in bad faith. The jury, as evidenced by its finding under the instruction given, found that they were. No appeal was taken from an order denying a motion for a new trial, and the question presented, therefore, is whether there is any evidence to sustain the finding.

[2] Plaintiff contends that inasmuch as the defendants described themselves in the lease as lessees, whereas in fact they were only sublessees, this, in and of itself, was sufficient evidence to sustain the finding. In this connection the plaintiff testified that he relied upon the statement that they were lessees, and would not have accepted the lease had he known they were only sublessees. Aside from the statement contained in the lease, nothing was said by defendants which would lead one to believe they were not sublessees, and there is not a particle of evidence to show that they had any intimation whatever of plaintiff's view on that subject. The lease from Phipps to the Restaurant Company was on record, and the court held that this gave the plaintiff constructive notice that the defendants were sublessees. But, aside from that, I am of the opinion that the word "lessees," as used in the lease, included sublessees. The defendants were, so far as the plaintiff was concerned, lessees. The fact, therefore, that the statement was made in the lease that they were lessees did not establish fraud, bad faith, or anything approaching it.

[3] It is also contended that the defendants were guilty of bad faith in not paying the $12,500 rent due to Phipps, and by reason of which the Restaurant Company and its subtenants were dispossessed. But, had such payment been made, it does not appear how it would have aided the plaintiff, because Phipps had then terminated the lease to the Restaurant Company, as he had a right to do on account of its insolvency Nor does it appear that Phipps would have given to the defendants a lease, had they endeavored to obtain one.

It is also claimed it was some evidence of defendants' bad faith that they did not obtain from Rich's a lease of the store upon the same terms as the lease which they had from the Restaurant Company. But there is nothing to show such a lease could have been obtained; on the contrary, when all of the evidence is considered, it appears it could not have been. Rich's leased the building for the purpose of carrying on a restaurant, but it never in fact entered upon the conduct of that business, and gave up its lease within a month after the plaintiff vacated.

Finally, it is urged that defendants were guilty of bad faith in preventing plaintiff from obtaining a lease of the store from Rich's, in order that they might lease the premises themselves. If the evidence established that fact, it would be evidence of bad faith; but it does

not. All that appeared on that subject was that, after Rich's had given plaintiff notice to vacate, the defendant David Schulte sent the real estate agent of Rich's to plaintiff, ostensibly for the purpose of negotiating a lease between him and Rich's. Plaintiff testified that he was anxious to obtain a lease upon the same terms as the old one, and that he even offered to pay $1,000 a year more; but the agent, without stating any reason, refused to accept it. The agent denied this, and the defendant David Schulte testified that Rich's would not rent the store to anybody, because it had determined to use the space as a café in connection with the restaurant, and therefore neither he himself, nor plaintiff, could obtain the lease of it.

As I view the evidence, it is of little importance which version is true. The store, in fact, was changed so as to form part of a café in the restaurant, and David Schulte obtained from Rich's the exclusive right of selling cigars therein. He was allotted space for his counter and show window in what had previously been plaintiff's store. After Rich's surrendered their lease, Schulte obtained a similar privilege from the new tenant of the building. He is now using that space for the purpose of selling cigars in connection with the restaurant. The mere fact that he has this privilege is insufficient to sustain a finding that in making the lease to the plaintiff he acted either in bad faith or was guilty of fraud. Considering the evidence in the most favorable light to the plaintiff, I think he failed to establish a cause of action against the defendants, and for that reason the complaint should have been dismissed, or a verdict for nominal damages only directed in his favor. ·

The judgment appealed from, therefore, is modified, by reducing the verdict to six cents, and, as modified, affirmed, with costs to appellant in this court and in the court below. All concur.