### MARSH v. JOHNSTON et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. CONTRACTS—BREACH—EXCUSE—INEVITABLE ACCIDENT.

When a party voluntarily undertakes to do a thing without qualification, performance is not excused because by inevitable accident, or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1409–1423.]

2. VENDOR AND PURCHASER—CONTRACT—BREACH—DAMAGES.

Where a vendor contracts to sell and convey in good faith, believing he has good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfill his contract, he is only liable for nominal damages for such breach.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 1047–1058.]

**3. SAME.**

Defendants having a contract for the purchase of certain land from the owner, who had agreed to consummate the same and deliver a deed October 1, 1906, contracted to convey the property to plaintiff at an increased price, and to close the transaction and deliver title on June 7, 1906. When the time came to complete the sale to plaintiff, defendants' vendor refused to transfer the property, which resulted in defendants' inability to convey to plaintiff. *Held* that, defendants having voluntarily agreed to convey the property to plaintiff without limitation or reservation, plaintiff was not limited to the recovery of earnest money and expenses, but was entitled to recover in addition, for loss of her bargain, the difference between the contract price of the property and its value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 1047–1058.]

Appeal from Trial Term.

Action by Annie M. Marsh against James Johnston and another. From a judgment for plaintiff, and from an order denying defendants' motion for a new trial, they appeal. Affirmed.

See 108 N. Y. Supp. 161.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Charles C. Clark, for appellants.
Henry Escher, Jr., for respondent.

WOODWARD, J. This action is brought to recover damages for a breach of contract to convey real estate. The defendant Johnston had contracted with one Van Dyke for the purchase of a 33-acre farm in Kings county, at an agreed price of $2,000 per acre. This contract was dated on the 27th day of September, 1904, and by its terms the title was to be closed on the 1st day of October, 1905, with an option to Johnston to have the time of delivery of the conveyance extended one year upon the payment of $1,000 in addition to the $1,200 which was paid upon the delivery of the contract. This additional $1,000 was paid, and an extension of this contract was duly executed by Van Dyke, so that the actual time of delivery, as fixed by the contract, was October 1, 1906. On the 3d day of February, 1906, Johnston entered into a contract with Annie M. Marsh, the plaintiff, by the terms of which he undertook to sell the premises in question to her at an agreed price of $4,400 per acre, title to be closed on the 7th day of May, 1906. This agreement provided that the plaintiff might extend the time of taking title for one month on the payment of an additional $500, and this was subsequently done, so that the time when it was the duty of the defendant Johnston to deliver title was on the 7th day of June, 1906. When the time for Johnston to make his delivery came, Van Dyke refused to transfer the property to Johnston or to his nominee, and this resulted in Johnston defaulting. The plaintiff brings this action to recover the amount of money paid upon this contract, the incidental expenses, and the value of her bargain, and the jury has awarded her $46,781, and it does not appear to be seriously questioned that the evidence is sufficient to support this finding, if the plaintiff is entitled to recover the value of her bargain with the defendant Johnston; the defendant Voorhees having been the owner of

an interest in the Van Dyke contract, and apparently a partner in the transaction.

In view of the conclusion we have reached, it may be important to point out just what the defendant Johnston contracted to do, for the principal contention upon this appeal is that the plaintiff is entitled to recover only her deposit and her expenses, under that exception to the general rule that, in the sale of real estate, if the vendor acts in good faith, but is unable to deliver a good title at the appointed time, he is only liable to restore the purchaser to his original status. The issue litigated and sent to the jury was whether the plaintiff, through her attorney, knew of the fact that the defendant Johnston did not have the legal title at the time of entering into the contract; it being the theory, apparently acquiesced in by both parties, that if the plaintiff knew this fact she could only recover her deposit and her expenses, which was the view most favorable to the defendant, as we shall presently point out. The defendant Johnston, with a contract for the purchase of this farm, which we shall assume for the purposes of this discussion was an absolute contract of sale, and not a mere option, as suggested by counsel, entered into a contract with the plaintiff in which he, as the party of the first part, agreed that—

"upon receiving such payments, and the said bonds and mortgages, duly executed and acknowledged as above provided, at the time and in the manner above mentioned, will at his own expense execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered, to the party of the second part or her assigns, a proper deed, containing a general warranty and the usual full covenants for the conveying and assuring to the party of the second part, or her assigns, the fee simple of said premises, free from all incumbrances, except as aforesaid."

This is not a simple contract on the part of an owner of premises to sell the same. It is an absolute undertaking on the part of the defendant Johnston to convey, or to cause to be conveyed, certain described premises. It was not necessary that he should own the premises at the time, or that he should have any claim, either of a legal or equitable nature. He would be fulfilling his contract if, on the 7th day of June, 1906, he presented a deed in proper form, executed by Van Dyke or any one in whom the title was vested at the time. Suppose the contract had been simply that the defendant Johnston would cause the conveyance to be made on the 7th day of June, 1907, and that both the plaintiff and defendant knew that Johnston did not have title; would that defeat the plaintiff's right to the value of her bargain? The defendant Johnston would have a perfect right to make such an engagement, and the plaintiff, knowing the facts, would have a right to make such a contract; and, it not being legally impossible of performance, the fact that the defendant was prevented from performing by the refusal of a third party to act would not defeat the plaintiff's right to all the benefits of her bargain. The general doctrine that, when a party voluntarily undertakes to do a thing without qualification, performance is not excused because by inevitable accident or other contingency not foreseen it becomes impossible for him to do the act or thing which he agreed to do, is well settled. Beach on the Modern Law of Contracts, § 217; Jacksonville, etc., Railway v.

Hooper, 160 U. S. 514, 528, 16 Sup. Ct. 379, 40 L. Ed. 515, and authority there cited; Ward v. H. R. B. Co., 125 N. Y. 230, 236, 26 N. E. 256, and authorities cited; Buffalo & L. Land Co. v. Bellevue L. & I. Co., 165 N. Y. 247, 254, 59 N. E. 5, 7, 51 L. R. A. 951, and authorities there cited. In the case last above cited it was said:

"It is a well-settled rule of law that, where a party by his own contract absolutely engages to do an act, it is his own fault and folly that he did not thereby provide against contingencies and exempt himself from responsibility in certain events."

So, in the supposed case, the defendant having contracted absolutely to deliver a title on a given day, it would be his own fault and folly if he neglected to protect himself against the contingency of the owner of the legal title refusing to make the necessary deed and delivering the same, and it does not appear what difference it could make with the law of the case whether the plaintiff knew or did not know that the defendant was the owner of the premises. Impossible conditions cannot be performed; and if a person contracts to do what at the time is impossible the contract will not bind him, because no man can be obliged to perform an impossibility; but, where the contract is to do a thing which is possible in itself, the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by the party, nor was it within his control. Jones v. United States, 96 U. S. 24, 29, 24 L. Ed. 644, and authorities there cited. There are, it is true, exceptions to this rule. It is not applied to executory contracts for personal services, nor for the sale of specific chattels, nor for the use of particular buildings. In these cases the courts imply a condition in the contract that the person or thing shall be in existence when the performance is required, and if the law interposes and renders performance impossible a party is excused (Labaree Co. v. Crossman, 100 App. Div. 499, 502, 92 N. Y. Supp. 565, and authorities there cited); but we find no case in which the court has, in a case where the contingency was fully known to the party making the engagement, relieved from the obligation of performance, or, what is equivalent, has relieved him from the obligation of paying the damages resulting from the breach of his contract.

It is the general rule that, where a party sustains a loss by reason of a breach of contract, he is, so far as money can do it, to be placed in the same situation, with respect to damages, as if the contract had been performed; and this rule is applied to sales of real estate, where the vendor has the title and for any reason refuses to convey it as required by his contract, subject to this limitation or exception: that if the vendor contracts to sell and convey, in good faith, believing he has a good title, and afterward discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfill his contract, he is only liable to nominal damages for a breach of his contract. But the rule is different, or, rather, the general rule prevails, where a party contracts to sell lands which he knows at the time he has no power to sell and convey. If he violates his contract in the latter case, he should be held to make good to the vendee the loss of his bargain, and it does not excuse the vendor that he may have acted in good faith and believed, when he entered into the contract,

that he should be able to procure a good title for his purchaser. Pumpelly v. Phelps, 40 N. Y. 59, 66, 67, 100 Am. Dec. 463, and authorities there cited.

This case, it is suggested by counsel, has been criticised and overruled, but a careful examination of the authorities leads to a contrary conclusion. The general rule prevails in this state, limited by the exception noted, and certainly the facts in the Pumpelly Case, supra, were such as to induce the court to extend the exception, if such a thing were reasonably to be expected. There is a comment in the case of Margraf v. Muir, 57 N. Y. 155, 160, that the Pumpelly Case is the widest departure from the general rule of damages; but there is no suggestion of overruling the decision, and in the case of Burr v. Stenton, 43 N. Y. 462, 468, the leading case is commented upon. The court say:

"The only point adjudged was that the rule did not apply to a case where the vendor knew, at the time of executing the contract, that he could not perform it by a conveyance of the title without the consent of a third person, which it subsequently turned out that he could not obtain, although he believed at the time in good faith he could obtain it. This was the only question in the case, and its decision involved only the application of the rule, well settled, that if the vendor, at the time of entering into the contract, knows that he is unable to perform it, he is liable upon its breach to pay the difference between the contract price and the actual value of the land, and that his belief that he could thereafter and before the time fixed for performance acquire title or otherwise render himself capable of performance did not prevent the application of the rule."

In Mack v. Patchin, 42 N. Y. 167, 175, 1 Am. Rep. 506, the court, in discussing a related question, says that:

"This court has recently held, in Pumpelly v. Phelps, 40 N. Y. 60, 100 Am. Dec. 463, that this rule should be limited to cases of good faith, and that, when a vendor contracts to sell lands, in which he knows at the time that he has no title, he is bound to make good to the vendee the loss also of the bargain sustained by his fault or fraud."

If there is any case which has repudiated the Pumpelly Case, supra, upon the only question involved in that litigation, we have not been able to find it with the help of counsel, and we reach the conclusion that the authority of that case has not been disturbed by anything which has followed it. If we are right in this proposition, it follows that where a vendor, knowing he has no title, engages to deliver a title upon a particular day, without providing for the contingency which he knows is likely to happen, he is not taken out of the rule which requires the vendor to respond in damages for the value of the bargain, as well as for the deposit and expenses. He knew the situation. Acting in good faith, he could easily provide for limiting the damages in his contract in the event that he was unable to close the transaction at the appointed time; and, failing to do this, he must answer for the breach, the same as in any other contract not coming within the exception. Chicago, Milwaukee & St. Paul Ry. Co. v. Hoyt, 149 U. S. 1, 13 Sup. Ct. 779, 37 L. Ed. 625; Labaree Co. v. Crossman, 100 App. Div. 499, 503, 92 N. Y. Supp. 565, and authority there cited.

We are persuaded that there is no reversible error in this case, and, while the damages appear large, the evidence is sufficient to support the verdict, and it ought not to be disturbed.

The judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.